Tucker, P.
I am of opinion, that the order of the county court is radically and incurably defective. The statute, expressly, and for very obvious reasons, requires, that the persons appointed to view the road, which is sought to be established, should be sworn. This is not an unmeaning or unimportant ceremony. Courts of justice do not act upon the evidence or the reports of individuals, unless under the sanction of an oath: and the report of viexoers, in the case of a road, is one of the means by which the legislature has fenced the interests of the county and the public. Without it, the highways of the country would be liable to perpetual change, from interested applications of individuals, to suit their own convenience, and from appointments of viewers (as is very common) suggested by themselves, who may make reports unduly favorable to their wishes, unless they act under the solemnity of an oath. Therefore, the oath of the viewers eannot be dispensed with. I take it to be a settled principle, that, in proceedings like this, merely statutory in their character, and unknown to the common law, the statute must appear to have been strictly pursued.
It was contended, that the error is cured by the subsequent proceedings, and that, as no objection to the omission to swear the viewers, was made in the county court, it must now be presumed that they were duly sworn : and the position is fortified by shewing, that had the objection been made, an *613 affidavit might have been supplied, upon a principle similar to that decided in Dawson v. Moons, 4. Munf. 535. I cannot think this position sustainable. The cases cited in support of it, are, principally, mill cases. Upon examination, they will be found inadequate; and a little reflection will prove their great dissimilarity to the case of a road.
In Dawson v. Moons, the error complained of, was the want of a date to the inquisition. It appeared, by the record, that a motion was rejected in the county court, to permit the sheriff to amend his return, by setting forth the day on which the inquisition was taken. This was deemed erroneous both by the circuit court and court of appeals. But what was done? Did they presume, that the date was right, and the inquisition duly returned ? Not at all: the judgment was reversed, and the cause sent back, with instructions to the county court, to permit, the sheriff to amend his return. In Bernard v. Brewer, 2 Wash. 76. which was a mill case, it did not appear that the owner of the property sought to be condemned for an abutment, had notice of the motion for a writ of ad quod damnum. He appeared after the writ and inquisition, and contested them ; and this, it was alleged, cured the error; but the court decided otherwise. It was said, however, that if he had appeared and contested the motion upon the merits of the case, he could not afterwards have availed himself of the want of notice. Why? obviously because as he did appear, which was the very' object of the notice, and as he did not object to the want of notice, he,—the only person interested in that notice,-—must be considered as waiving it. The case of Coleman &c. v. Moody, 4 Hen. & Munf. 1. is to the same effect, though less strong. For there, Coleman had notice, but because he was summoned as “acting executor and trustee of a decedent,” he objected, that he was not duly summoned, he being in fact tenant or proprietor of the land. This was indeed frivolous. The object of the notice was to let him know, that a motion was to be made which he might be interested in defending; and it was of little importance, that he had been stated in that notice to be interested in the *614 character of trustee. But if it had been, as he made no objection to the informality, but defended the case on the merits, he was concluded from farther objection.
These cases, then, would not sustain the judgment of the court in this case, if road and mill cases were strictly analogous. But they are not so. In a mill case, the proprietor of the land proposed to be condemned, is defending his own interest, and that interest, perhaps, is alone involved. But in a road case, the public are, in various regards, emphatically parties. It is interested in the changes of the roads. It is interested in their not being altered, to the prejudice of the public, at the caprice or for the convenience of individuals. And the county is interested in a pecuniary view; for if the road is established, the money assessed to the proprietors of the land through which it passes, comes out of the coffers of the county. It is, then, a duty to the public, that the county court should see, that those who have been appointed to view the road, and on whose information it acts, have acted under the solemnities of an oath. And if it does not appear from its record, that it has done so, it is the duty of the appellate tribunal, in its turn, to protect the public interest, by reversing the irregular proceeding. No act of a party contesting the establishment of the road, can waive a requisition introduced, not for his benefit, but for the benefit off the community. He may himself be interested in having the road, though he may complain of the inadequacy of the damages. Indeed, from a report of viewers not sustained by oath, the court cannot even satisfactorily know, that the persons summoned are persons through whose lands the road will pass; and, therefore, it cannot appear that proper persons are before the court, who would have power to waive this error in the proceedings, if indeed that, power can be held to exist in any party to the record.
I am of opinion, therefore, that the proceedings should be reversed up to the appointment of the viewers; and the cause sent back to the county court, to be further proceeded in.
The other judges concurring, order reversed &c. and case remanded to the county court.